**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| TRAVELERS HOME AND MARINE | | |
| INSURANCE COMPANY, | * | |
| | | |
| **Plaintiff,** | * | |
| v. | | **Case No.: GJH-14-18** |
| | * | |
| PEOPLE'S CHOICE ELECTRIC | | |
| LLC, ET AL., | * | |
| | | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This is a subrogation action brought by Plaintiff Travelers Home and Marine Insurance Company ("Travelers") against People's Choice Electric, LLC ("People's Choice"), Potomac Electric Power Company ("PEPCO"), Stanley Hubbard, Jr. ("Hubbard Jr."),  Hubbard Lighting & Power Systems, LLC ("Hubbard Lighting"), and Servicez Unlimited, Inc. ("Servicez") for their alleged roles in a fire that caused $107,316.82 of property damages to the home of Masai McDougall, who was the holder of an insurance policy issued by Travelers. Servicez has filed a cross-complaint against PEPCO, People's Choice, Hubbard Jr., and Hubbard Lighting seeking contribution and/or indemnification. *See* ECF No. 9. PEPCO has filed a motion for summary judgment as to Servicez's cross-claim. *See* ECF No. 19. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons discussed more fully below, PEPCO's motion for summary judgment is GRANTED, in part, and DENIED, in part.

## I.   BACKGROUND

Masai McDougall ("McDougall") was the owner of a home located at 6753 Eastern Avenue, Takoma Park, Maryland. *See* ECF No. 1 at 4 at ¶ 11. Around October 2009, McDougall entered into a contract with Servicez, a general contractor, for home remodeling services. *See id.* at 10 at ¶ 10. Servicez agreed that, as part of the remodel, it would oversee the upgrade of the home's power supply by replacing an existing 60 amp fuse box with a 200 amp fuse box. *See id.* at ¶ 11. In turn, Servicez retained a subcontractor, People's Choice, to replace the fuse box. *See id.* In order to upgrade the fuse box, People's Choice also needed to replace McDougall's electric meter. *See id.* at ¶ 12. People's Choice, however, was not able to replace the meter without the assistance of the local power company, PEPCO. As such, People's Choice coordinated with PEPCO to make this change. *See id.* According to Travelers, however, PEPCO either never changed the meter or failed to change it in a timely fashion. *See id.* at 6 at ¶ 11.

On July 10, 2012, a fire broke out at McDougall's home causing substantial property damage. *See id.* at 4 at ¶¶ 11, 12. After the fire, McDougall submitted a claim to his insurance company, Travelers, who paid McDougall $107,316.82 for the damage. *See id.* at ¶ 13. Thereafter, Travelers filed the instant subrogation lawsuit against People's Choice, PEPCO, Hubbard Jr., Hubbard Lighting, and Servicez for their alleged roles in causing the fire. PEPCO, however, was dismissed from Travelers' lawsuit following the parties' execution of a Joint Tortfeasor Release. *See* ECF No. 19 at 2; *see also* ECF No. 15.

In its answer to Travelers' complaint, Servicez filed a cross-complaint for contribution and/or indemnification against all of the other defendants, including PEPCO. *See* ECF No. 9. PEPCO has filed a motion for summary judgment as to Servicez's cross-claim. For the reasons

discussed below, the Court will grant PEPCO's motion for summary judgment, in part, and deny it, in part.

## II.    STANDARD OF REVIEW

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed.R.Civ.P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F.Supp.2d 669, 671 (D. Md. 1999). Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *See Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

III.    **DISCUSSION**

PEPCO argues that the plain language of the Maryland Uniform Contribution Among

Joint Tort-Feasors Act ("the Act") prevents Servicez's claim for contribution.  *See* ECF No. 19;

*see also* Md. Code Ann., Cts. Jud. Proc. Code §§ 3-1401, *et seq*. Section 3-1405 of the Act is

particularly relevant here as it addresses the effect of a release of one joint tortfeasor on the right

of contribution by another non-settling joint tortfeasor. Section 3-1405 provides that the right to

contribution by a non-settling joint tortfeasor may be extinguished if the injured person and the

settling joint tortfeasor sign a release that: "(1) [i]s given before the right of the other tort-feasor

to secure a money judgment for contribution has accrued; and (2) [p]rovides for a reduction, to

the extent of the pro rata share of the released tort-feasor, of the injured person's damages

recoverable against all other tort-feasors." Md. Code Ann., Cts. Jud. Proc. Code, § 3-1405. Here,

PEPCO contends that the Joint Tortfeasor Release it executed with Travelers satisfies the

requirements of § 3-1405 and therefore extinguished any contribution claim by Servicez. The

Court agrees.

The first requirement of § 3-1405 is that the release be given before the non-released

tortfeasor has accrued a right of contribution, *i.e.,* before Servicez has paid more than its pro rata

share. Here, there is no dispute that this condition was met; Servicez had not paid more than its

pro rata share of damages at the time PEPCO and Travelers executed the Joint Tortfeasor

Release. Servicez right to contribution had therefore not accrued. *See Adams v. NVR Homes,

Inc.*, 135 F. Supp. 2d 675, 709 (D. Md. 2001) (first requirement of § 3-1405 satisfied where the

non-released tortfeasor "ha[d] yet to make any payments to plaintiffs [when] the [Settlement]

Agreement was executed"); *see also Southern Maryland Oil Co. v. Texas Co.*, 203 F.Supp. 449

(D. Md. 1962) (holding that the right to contribution is a statutory right that accrues at the time of payment.).

The second requirement of § 3-1405 is that the release provide for a reduction of the injured person's damages recoverable against all other tortfeasors, to the extent of the pro rata share of the released tortfeasor. Again, there is no dispute that this condition was met. The Joint Tortfeasor Release provides:

> *The Releasors agree that all damages recoverable by them against any person, company, or entity other than the Released Parties, in any suit or action, present or future, are hereby reduced under the provisions of the Maryland Uniform Contribution Among Joint Tort-Feasors Act, Md. Code. Ann., Cts. & Jud. Proc. §§ 3-1401 et. seq. by the amount of the extent of the consideration paid in this Release or to the extent of the Released Parties' statutory pro rata share of the Releasors' damages recoverable against all other tortfeasors, whichever is greater,* and it is agreed that, for that purpose only, the Released Parties are to be considered joint tortfeasors with any other tortfeasors liable to the Releasors for the damages or injuries claimed to arise as a result of the Occurrence, to the same extent as if the Released Parties were adjudicated to be joint tortfeasors by the final judgment of a court of record after trial on the merits.

ECF No. 19-1 at 6 (emphasis added).This language satisfies the requirements of § 3-1405 as it clearly "[p]rovides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all other tortfeasors." § 3-1405(2). Having therefore satisfied the requirements of § 3-1405, PEPCO is protected against the claim for contribution asserted by Servicez. *See, e.g*., *Chilcote v. Von Der Ahe Van Lines*, 55 Md.App. 291, 295 (1983); *Martinez v. Lopez*, 54 Md.App. 414, 420 (1983). Thus, to the extent Servicez's cross-claim against PEPCO is one for contribution, the Court will grant PEPCO's motion for summary judgment.

Notably, Servicez does not dispute PEPCO's contention that the requirements of § 3-1405 have been met; instead, Servicez contends that § 3-1405 does not apply here because its cross-claim against PEPCO is a claim for indemnification *not* contribution. *See* ECF No. 20 at 2; *see also* Md. Code Ann., Cts. Jud. Proc. Code §3-1406 (recognizing that § 3-1405 "does not impair any right of indemnity under existing law"). When construing Servicez's cross-claim against PEPCO as one for indemnification, the Court must deny PEPCO's motion for summary judgment.[1]

 In Maryland, as elsewhere, the right to indemnity may arise by express agreement between the parties. *Southern Maryland Oil Co. v. Texas Co.*, 203 F.Supp. 449, 452 (D. Md. 1962). "Maryland law [also] recognizes a right to indemnity independent of any contract where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages." *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 595 (D. Md. 1985). This case presents the later situation where the right to indemnity arises from the conduct of the parties.

When confronted with an implied indemnity case such as this, Maryland follows the "active/passive negligence" rule, by which a defendant whose negligence was "passive" may seek indemnity from a tortfeasor's whose negligence was "active." *See Franklin v. Morrison*, 350 Md. 144 (1998); *see also Hartford Accident & Indemnity Co. v. Scarlett Harbor Assocs.*, L.P., 109 Md.App. 217 (1996). However, "[i]t is well-established under Maryland law that one

---

[1] Although indemnification and contribution are often confused, the differences are important in a case such as this. "Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate—or *pro rata*—share of the adverse judgment." *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1103 (4th Cir. 1989). Thus, indemnification and contribution are two different claims and can be raised as such.

who is guilty of active negligence cannot obtain tort indemnification." *Franklin*, 350 Md. at 163, 177. Thus, the question here is whether Servicez's alleged negligence is "active" or "passive." In making this determination, the Court must examine the allegations in the plaintiff's complaint. *See Hartford*, 109 Md.App. at 278; *see also Pyramid*, 606 F.Supp. at 596. If the conduct attributed to the party seeking indemnification – in this case Servicez – constitutes active negligence, or if it is clear from the complaint that this party's liability would only arise from proof of active negligence, then there is no valid claim for indemnity. *See Pyramid*, 606 F.Supp. at 596.

Here, a juror could reasonably conclude that Servicez's liability was passive thus entitling them to indemnity from PEPCO.  Travelers maintains that Servicez, as the general contractor, was negligent in *overseeing* People's Choice's replacement of the fuse box and PEPCO's replacement of the electrical meter. *See id.* at 5 at ¶ 12 (emphasis added). Specifically, Travelers alleges that Servicez "*failed to monitor and oversee* the performance of the electrical fuse box installation to ensure it was performed in a competent and workmanlike manner, *failed to monitor and oversee* the performance of all those tasks which are the custom of the electrician in this location and field when performing this type of installation (including, but not limited to, the coordination of the replacement meter with PEPCO), and failed to give warning to Mr. McDougall of the deficiencies or hazards associated with this party's installation of the 200 amp fuse box . . . ." *Id.* (emphases added)*. Thus, Travelers' negligence claim against Servicez is not based on anything Servicez actually did; rather, it is based on what it *did not do* in its supervision of the work performed by its subcontractors. Thus, if a jury were ultimately to determine that Travelers' damages were attributable to People's Choice's active negligence (*i.e.* its failure to properly install the new fuse box) or PEPCO's active negligence (*i.e.* its failure to properly

replace the electrical meter), it might also find that Servicez' failure to discover or remedy these conditions constituted passive negligence. *See e.g.*, *Pyramid*, 606 F.Supp. at 596 (a right to indemnity exists "where the indemnitee's negligence is based upon a failure to inspect and thereby discover a defect in an article manufactured by the indemnitor"); *Max's Of Camden Yards v. A.C. Beverage*, 172 Md. App. 139, 146 (2006) (identifying various situations in which a right to implied indemnity between tortfeasors has been recognized as including when (1) "a tortfeasor [is] liable [] vicariously for the conduct of another, (2) for failing to discover a defect in a chattel supplied by another, (3) for failing to discover a defect in work performed by another, and (4) for failing to discover a dangerous condition on land created by another");*Erson v. Int'l Special Attractions, Ltd.*, No. 13-1625, 2014 WL 3055554, at *8 (D. Md. July 1, 2014). Accordingly, the Court must deny PEPCO's motion for summary judgment as to Servicez's indemnity claim.

## IV.    CONCLUSION

For the reasons stated below, the Court will grant, in part, and deny, in part, PEPCO's motions for summary judgment.[2]


Dated: <u>March 26, 2015</u>                              <u>        /S/              </u>
                                                                     George J. Hazel
                                                                     United States District Judge


---

[2] The Court notes various concerns raised by PEPCO in its motion for summary judgment concerning its notice of Servicez's counterclaim. *See* ECF No. 19 at 4-5. To the extent, PEPCO requires additional time to participate in discovery as a result of its belated notice, the Court, upon motion, would be inclined to permit additional time for such discovery to take place.